GEORGE T. DONNELLY ET AL. *v.* JOHN SCARBOROUGH ET AL.

[46 South., 404.]

1. STATUTES. *Repeals. Laws 1906, ch. 167, p. 185. Laws 1908, ch. 214, p. 216. Harrison county. Division into court districts. Constitution 1890, § 260.*

    Laws 1906, ch. 167, p. 185, authorizing an election to determine whether Harrison county should be divided into two court districts was subject to and was repealed by Laws 1908, ch. 214, p. 216, enacted after the election, but before determination and promulgation of the result thereof, and Constitution 1890, § 260, providing that "the boundary of a judicial district in a county shall not be changed, unless, at an election held for that purpose, etc.," has no application.

2. SAME. *Supreme court practice.*

    Where an appellant's rights are wholly dependent upon a repealed statute, the supreme court will not reverse the judgment appealed from, although rendered before the repeal of the statute.

FROM the circuit court of Harrison county.

HON. WILLIAM H. HARDY, Judge.

Donnelly and others, appellants, were plaintiffs in the court below; Scarborough and others, appellees, members of the board of supervisors of Harrison county, were defendants there. The object of the suit was to compel, by mandamus, the defendants, as members of the board of supervisors of the county, to canvas the returns of an election held under an act of the Legislature, approved April 18, 1906 (Laws 1906, p. 185, ch. 167), looking to the division of Harrison county into two circuit and chancery court districts, and to promulgate the result, the board of supervisors having failed and neglected, if in fact it had not refused, to act in the premises. The court below denied the mandamus and dismissed the suit and the plaintiffs, December 16, 1907, appealed to the supreme court.

· Afterwards, in March, 1908, the Legislature passed an act (Laws 1908, ch. 214, p. 216) ·repealing the statute under which the election was held.

Two other suits, one arising from the same election and the other an incident of this case, are reported, *Native Lumber Co.* v. *Board of Supervisors,* 89 Miss., 171; s.c., 42 South., 665, and *McHenry* v. *State, ante,* 562, s.c., 44 South., 831.

*E. M. Barber,* for appellants.

The court below erred in decuning to do what this court plainly stated in the case of *McHenry* v. *State, ante,* 562, 44 South., 831, it should have done.

This court in unmistakable language stated in the *Native Lumber Co.* v. *Board of Supervisors,* 89 Miss., 171; s.c., 44 South., 831, that the board of supervisors had no function to perform relative to the establishment of the second district further than to declare the district created, upon the coming in of the report of the election commissioners and in the case of *McHenry, supra,* that a mandamus suit generally moves along a very narrow groove at best, and this particular mandamus suit moves perhaps in as narrow a groove as any suit in mandamus could possibly move, which declarations of this court ought to have been, but were not, respected in the court below.

There is a new feature, however, that this court will have to take into consideration, and that is, the attempt of the Legislature of 1908 to repeal ch. 167, Laws 1906, under which the second district of Harrison county was created.

If there had been two judicial districts established in Harrison county before the passage of the act of 1908, could the act of 1908 as it stands repeal either one of said districts, and if so, which one?

Under the act of 1906 and the opinions of this court, McHenry is as truly the county seat of the second district of Harrison county as Gulfport is the county seat of the first district. The Legislature could not change the boundaries of a judicial

district within a county, and if it cannot do this it certainly cannot abolish the district without submitting the question to the voters of the district. A county may exist although its government had not been established; it may be created although not organized. 7 Am. & Eng. Ency. Law (2d ed.), 905, and the authorities there cited, and 11 Cyc., 345, and citations for the doctrine that it is not a prerequisite to the creation or existence of a county that the officers be elected.

It is a well-settled rule that the right of a successful candidate to an office, is not dependent on the certificate of election but is dependent upon the actual result of the election.

The certificate of an election is only *prima facie* evidence of the result. 14 Ency. Law and Proc., 387, and citations.

As this court has said relative to the second district of Harrison county that the report of the elections commissioners was final and conclusive as to the result, does this not settle the question of the second judicial district of Harrison county?

The duty of the board of supervisors as this court had already said, being merely ministerial, could the failure of their performance of a ministerial duty enable the Legislature to repeal the act under which the election was held, with any more degree of certainty than it could have done had the board of supervisors promptly declared the result and built a courthouse at McHenry?

Had the board of supervisors declared the result, on the presentation of the report by the election commissioners and proceeded at once to build the courthouse at McHenry, counsel would not contend that the Legislature could have repealed the act under which the election was held and the courthouse built and thereby abolish the second district.

The repealing act of 1908 is unconstitutional by virtue of § 260 of the Constitution of 1890 if the district was established although it has not been organized.

*Alexander & Alexander,* on same side.

Except as the recent act of the Legislature repealing the

former act under the second district was created is involved, the case presented on this appeal is in no respect different from that presented in two former appeals to this court. It merely presents a case of a recalcitrant judge of an inferior court who refuses to acknowledge the authority or acquiescence in the decision of the highest tribunal of the state. We decline to thresh old straw. That the report of the commissioners which the law did not require to be sworn to was signed by them and filed with the board of supervisors is not denied. It was shown by the report itself, by the order of the board of supervisors and by the clerk.

We pass at once to the question of the validity of repealing act.

The power of the Legislature to create or abolish counties or judicial districts which would otherwise be plenary is limited by § 260, Constitution 1890, which provides, among other things, that the boundary of any judicial district in a county shall not be changed unless at an election held for that purpose, two-thirds of those voting assent thereto. In view of this positive prohibition, there can arise but one question in this case, viz., had two judicial districts in Harrison county been created before the passage of this repealing act? If what was done under the act of 1905 amounted to the creation of the second district, it is obvious that the district cannot under § 260 of the Constitution be changed without an election held for that purpose. There can be no doubt, as we shall hereafter show, that the entire abrogation of a district is a change of its boundaries within the meaning of this section. If without the vote the Legislature cannot change the boundaries, it certainly cannot abolish the district including the boundaries of each. The determining question therefore is whether the second district had in fact been created, and that involves a construction of the chapter, acts 1906, providing for the division of the county.

It is well settled that a county or a district in a county may

exist although its government has not been established; it may be created and yet not organized. 7 Am. & Eng. Ency. Law, 905; *Carleton* v. *People,* 10 Mich., 250; *State* v. *Blasdell,* 6 Nev., 40; *Merchants National Bank* v. *McKinnery,* 6 S. D., 106.

An election of officers for a county is not a prerequisite to the creation and existence of a county. 11 Cyc., 345.

At what period of time and on the happening of what event was the second district of Harrison county created? The act itself and the decisions of the supreme court construing it have put this beyond doubt.

In *Native Lumber Company* v. *Harrison County,* 89 Miss., 171, and the very recent case of *McHenry* v. *State, ante,* 562, 44 South., this court has decided that the board of supervisors had no discretion given them in this matter. To quote the language of the last opinion: " No testimony of any imaginable kind was needed in order to discharge promptly its ministerial duty. . . . The board had nothing in the world to try. Their duty was instant obedience to the direction of the statute, to meet and declare the result as stated."

It is a well recognized rule in regard to elections that the right of a successful candidate to office is dependent on the actual result of the election and not on the issuance of the certificate of election. 14 Cyc., 387.

Certificates of election are usually only *prima facie* evidence, but under this act, as the supreme court has held, report of the commissioners is final and conclusive as to the result. The mere ministerial act of the board of supervisors in declaring the district created is of no efficacy in creating the district. Its declaration is not even analogous to an ordinary certificate of election. Surely the refusal of the board to perform this mere ministerial act will not be held to destroy the district if created in fact by a majority vote of the qualified electors.

Certainly, the total removal of a line is a removal or a change thereof. Abolition of a district, once formed and or-

ganized, would result in a total removal or abolition of a county seat, the abandonment of a courthouse, the disrupting of settled conditions, and the destruction of values; in all of which the people are supposed to have a direct and vital interest. On the other hand, a slight change of the boundary line, if that be all that is meant by § 260, is a change that would scarcely be felt except by a few who live or own property in the zone between the old and new lines. While courts cannot sit in judgment on the wisdom or reasonableness of a statute of constitution, yet it is always proper in ascertaining the true meaning thereof to look to all the cognate provisions and ascertain the intent in the light of these and all the evils to be remedied and the purpose in view. It is manifest that the Constitution in these provisions which are intended to safeguard from hasty and spasmodic changes, counties, judicial districts in counties, and seats of justice when once formed, look not to mere shapes of lines on a map. They have regard to the rights of the people affected by the proposed changes — the welfare, convenience, and comfort of the people and their right directly to participate in these important matters so vitally affecting local self-governments.

The total removal of boundary lines would certainly include the idea of change as defined by the lexicographers. Webster defines change, among other things as, "Any variation or alteration; a passing from one state or form to another, as a change of countenance, change of habits, or principles."

As an illustration, he quotes "apprehension or change of dynasty."— Hallam. "All the days of my appointed time will I wait till my change come."— Job.

Certainly if the death of one can properly be called a change, the one great change, the death of a district is a change of the district including its boundaries.

The Standard Dictionary defines the verb " change " among other things as " To cause to vary; become different in appearance, form or nature . . . To replace by substitution . . .

to become of different appearance, form, character or condition."

*Ford, White & Ford,* for appellees.

Chapter 167 of the laws of 1906 provides that the election commissioners shall canvas the returns of the election and report the result of the election and then provides that:

" It shall then be the duty of the board of supervisors if it appear from the returns of said election that a majority of the qualified electors voting thereon have voted in favor of the creation of the said district to declare the same created," etc.   (Laws 1906, ch. 167, § 3.)

In affirming the decree of the chancellor dissolving the injunction the supreme court said:

" The counting of votes, the canvassing of the returns, and a declaration of the result were by the political department of the government — the Legislature — expressly committed to the election commission and the board of supervisors." *Native Lumber Co.* v. *Board of Supervisors,* 89 Miss., 177.

Both the language of the statute and the opinion above cited vested in the board of supervisors the final decision of the result of the election from the returns themselves, where the report of the election commissioners was challenged.

A large number of individual taxpayers in the proposed second district filed a caveat with the board of supervisors, making charges of fraud in the election and objected to the board entering an order declaring the county divided.

It was brought to the knowledge of the board of supervisors that the report on file which was neither sworn to, acknowledged or certified to be true, but which the objectors had up to that time treated as the report of the election commissioners, was not in fact filed by the election commissioners or either of them or any returning officer appointed by them.

The board made an order requiring the election commissioners to file the returns of the election, but they concealed or

destroyed the returns and ignored alike the order of the board and the charges of fraud made against them.

The board thereupon cited the election commissioners to appear before them as witnesses in the investigation then being made, but they disobeyed the subpœna.

The board of supervisors then made a full investigation and found as a fact and entered an order to that effect on their minutes, that the election carried against the division of the county, that the so-called report was not filed by the election commissioners or either of them, and that the things stated therein were false and that the election commissioners had filed no returns, nor report of the result of the election; and they entered an order declaring the county not divided into two districts.

As no appeal would lie no appeal was taken from this order of the board.

The district attorney was induced to file a petition for a writ of mandamus to compel the board to enter an order declaring the county divided, but upon learning the facts in connection with the election refused to proceed further or to permit his office to be used for that purpose and dismissed his petition, and thereupon this suit was brought by Donnelly and others seeking a writ of mandamus to compel the board to enter the order declaring the county divided; and to accomplish by a writ of mandamus that which they could not accomplish by an appeal from the action of the board of supervisors.

The cause was submitted to the court below, without a jury, and the court found as a fact that all of the findings of the board of supervisors were correct; that the election was carried against the division of the county, that the pretended report filed with the board of supervisors was not filed by the election commissioners and that its contents were false, and that the election commissioners had not canvassed the returns and reported the result of the election to the board of supervisors; and the court denied the petition for a writ of mandamus.

Pending this appeal, ch. 167, Laws 1906, was repealed by the Legislature.

If mandamus will lie in this class of cases at all, it could only be resorted to in order to compel the performance of a purely ministerial duty, that is to compel the board of supervisors to act where they had refused to act, but not to direct how they should act, where their action requires the exercise of judgment or discretion of any sort, and surely it will not be contended that the duties of the board of supervisors were not judicial to the extent of deciding whether or not the election commissioners had filed a report of the result of the election or, in case more than one pretended report is filed, in deciding which of the several is the report of the election commissioners; and the board of supervisors having acted once the courts are without power to compel them to act again.

Sections 3 and 4 of ch. 167, Laws 1906, provide that in case the election commissioners fail to perform the duties required of them, all the duties required of them should devolve upon the board of supervisors. Whether this applies to cases where there is a partial failure or only to cases where there is a total failure on the part of the election commissioners, the result is the same so far as this case is concerned. If the latter is the proper rule the board was powerless to enter an order declaring the county divided without a report of the election commissioners; if the former is the rule then the board could not enter an order dividing the county for the reason that their investigation showed that the election had in fact carried against the division.

Section 260 of the Constitution is not violated by the repeal of this law. It says "nor shall the boundary of any judicial district in a county be changed unless at an election held for that purpose, two-thirds of those voting assent thereto." If this applies to the creating or abolishing of a district then no district has ever been created, because two-thirds did not vote therefor — only one majority, being claimed. But our courts

have often said it has no such meaning. *Alfred* v. *State,* 37 Miss., 296; *Lindsley* v. *Coahoma County,* 69 Miss., 815.

By " changing a boundary of a judicial district," it does not mean creating a boundary or abolishing a boundary-changing it from nothing to something or from something to nothing — bringing it into existence or destroying it. If it had such meaning it would apply to the creating of a district as well as to the abolishing of a district and a two-thirds majority would have been necessary to create it in the first instance. In *Lindsley* v. *Coahoma County,* Chief Justice CAMPBELL said:

" The obvious purpose of the clause in § 260 of the Constitution in the words 'nor shall the boundary of any judicial district in a county be changed, unless, at an election held for that purpose, two-thirds of those voting assent thereto ' was to protect the dividing line, whereby a county is or may be divided into districts for holding circuit and chancery courts, from change, except as provided for. The language is peculiar. The ' boundary ' is not to be changed, that is, the line drawn in the county, whereby the county is divided into judicial districts, shall not be changed unless, etc. . . . The sole object of the clause of the Constitution under consideration is to inhibit change of the ' boundary ' described. There is no interference by it with the right of the Legislature to abrogate the evil of two districts in a county. The inhibition is only of a change of this line by drawing it somewhere else."

A new district had not been created and therefore none has been abolished.

*McWillie & Thompson,* on same side.

This proceeding was one by mandamus to compel the supervisors to enter an order declaring the county divided into two judicial districts when they had decided as a matter of fact that the writing upon the strength of which the order was demanded was not a report made by the election commissioners. Certainly it was for the supervisors to decide whether a writing

91 Miss.—38

was in fact a report filed by the commissioners of the result of the election, since otherwise their action would be controlled by unauthorized persons whose pretended reports, while agreeable to their wishes might be wholly at variance with the facts. The supervisors could not declare the election to have resulted in a division of the county until they had a report to that effect made by the commissioners and whether or not they had such a report was for them to determine. The find on this subject was one of those preliminary facts necessary to the exercise of their authority which are to be accepted as binding and conclusive, and which are illustrated by numerous examples in the case of *Noble* v. *Railroad Co.,* 147 U. S., 173, 174.

It should be accepted as a fact that the commissioners never filed any report of the result of the election. The finding of the supervisors to that effect is conclusive and needs no support, but it is in fact supported by that of the circuit judge to the same effect, a jury having been waived by the parties. Surely the further recitals in the two findings that the election in fact went against a division of the county and that the commissioners never in fact canvassed the returns rather add to than detract from the force of the finding as to the failure of the commissioners to make any report. The matter of reporting the result of the election being committed to the commissioners, the failure on their part to make such report left the supervisors without that authoritative statement of such result upon which alone they were empowered to declare the district established; and it is, therefore, a sufficient answer to the petition for mandamus that the supervisors have not now and never have had any report from the commissioners.

It will be observed, however, that the failure of the commissioners to fully perform their duties has a more extensive effect than merely to render the supervisors unable from want of authoritative information to perform the duty devolved upon them in respect to declaring the result of the election. By the express terms of the statute the supervisors were authorized

to proceed to perform all the duties imposed upon the commissioners in case of their " failure to act." This does not mean that only their total failure in any of the steps essential to the complete carrying out of the purpose of the state, and as the duty devolved upon the supervisors to proceed whenever such failure to act occurred, it was of course left to them to say whether or not there had been in any essential particular a failure on the part of the commissioners to perform the acts required of them by the law. If the commissioners should as it has been ascertained they in fact did, fail to canvas the returns and report the result to the supervisors it was of course the duty of the supervisors to canvas the returns and on ascertaining the result to declare the same, and exactly the same steps became necessary on a failure to report alone, since without proper information of the result as ascertained by the canvassing of the commissioners the supervisors would themselves have to do the canvassing in order to make sure of the result before declaring it.

It is thus seen that the board was not only in no such attitude as made it subject to mandamus, but that the necessities of the case and the requirements of the law both called for the effort made by them to secure the returns from the commissioners. It seems, however, that the commissioners saw fit to conceal or destroy the returns and ignored the order of the supervisors requiring them to file the same, and as well the charge of fraud made against them. And afterwards when the supervisors resorted to a subpœna in order to secure their personal attendance, when at least a report might have been procured from them, they disobeyed the subpœna and absented themselves from the session of the board. Under these circumstances it is plain that while an election was held it has been made wholly ineffective by the conduct of the commissioners in failing to perform their duties and in so dealing with the matter as to render the board unable to perform its duties. The result of the election has never been legally ascertained and the board

cannot be made to treat the pretended report on file as showing such result against their own firm convictions that it is not in fact a report of the commissioners and does not disclose the true state of the case.

The above considerations are presented on this appeal for the first time and are wholly unaffected by either of the decisions before referred to touching the election in question.

An appellate court will always take notice of a statute which removes the subject matter of a suit entirely from the domain of controversy; and, besides, if the judgment was reversed and the cause sent back the same result would follow.

The power of the Legislature to repeal the act of 1906 is in no wise affected by § 260 of the state Constitution providing that the boundary of no judicial district shall be changed unless at an election held for that purpose, etc. That contention would involve the assumption that the two districts were already created by the election independently of the other proceedings required of the commissioners and the board of supervisors, and would be fatal to the present proceeding, for if the two districts already existed, to require the board to declare the result of the election would accomplish nothing. Mandamus does not lie to compel the performance of a vain thing. *Myers* v. *Chalmers,* 60 Miss., 790.

The election alone could not, however, create the two districts. The returns had to be canvassed, a report to the board had to be made by the commissioners and the result had to be declared by the board, and none of these things seem to have occurred before the passage of the repealing act. Certainly disputation cannot go so far as to insist that the board had declared the result of the election, and we insist that until that was done " by its orders entered on the minutes of the board " as the act prescribes, the districts had not been created, and the Legislature had full power to repeal the act of 1906. The action of the commissioners in making no report, in refusing to respond to the subpœna of the board, in failing to produce the

returns or answer in any way the charge of fraud standing against them was enough to satisfy the Legislature that the effort to create the two districts had proved abortive. Not only had the board not declared the result but it had also never been in a position to declare it.

If it would have been contrary to the Constitution for the Legislature to repeal the act of 1906 if the two districts had been already created, the act must be taken as a declaration that a state of things existed warranting the exercise of the power to repeal, since we must indulge every presumption in favor of the constitutionality of all legislative acts. This legal declaration which is involved in the enactment of the repealing statute is a declaration made by the political department of the government in respect to a matter purely political and must be given effect by the courts. The whole subject lies within legislative power. It cannot be denied that it was competent for the Legislature to repeal so much of the act of 1906 as related to the erection of another courthouse, the maintaining of county offices at two places, and the holding of terms of court. No provision exists for the holding of courts except as an undivided county, and by special acts the Legislature at its last session so provided for holding terms of the circuit and chancery courts, thus showing that the county was regarded as an undivided one. The Legislature is beyond control in these matters and any action by the courts would be nugatory.

It has been distinctly decided by this court, however, that § 260 of the Constitution does not in the slightest degree limit the power of the Legislature to abolish by enactment a division of a county into judicial districts, or as the court expresses it, to " abrogate the evil of two districts in a county." The section relates only to a change in the boundary line of two districts that are not abolished but continue to exist. *Lindsley* v. *Coahoma County*, 69 Miss., 815.

Argued orally by *E. M. Barber* and *C. H. Alexander*, for

appellant, and by *W. A. White* and *Thomas A. McWillie,* for appellee.

MAYES, J., delivered the opinion of the court.

By ch. 214, Laws 1908, ch. 167, p. 185, Laws 1906, providing for the division of Harrison county into two circuit and chancery court districts, is repealed. The district authorized by the act of 1906 to be created never had any but a potential existence, and it was perfectly within the power of the Legislature to repeal the act at the time it did; and sec. 260 of the Constitution of 1890 was in no way violated. This being the case, there is now nothing presented by this record for us to consider, as its base has been withdrawn. For the reasons indicated in this opinion, we approve only the result reached by the court below.

*The case is therefore affirmed.*